Our last case today is United States v. Taylor. Mr. Earhart. May it please the court. I'm Jim Earhart, counsel for the appellant in this case. And there are two issues before the court which are somewhat interrelated. And the first is whether or not the United States reached a plea agreement in this case when it advocated a sentence at a defense level 33, which created a range of 135 to 168 months, contrary to the stipulated guideline calculation contained in the plea agreement, which was defense level 31, which corresponded to a guideline range of 108 to 135 months. The related issue is whether or not the court erred in calculating the guideline defense level when it included a five-level enhancement for a pattern of activity and a two-level enhancement for the use of a computer. The reason I indicate these are related is when this plea agreement was negotiated between the parties, there were objections to those enhancements. They were discussed with the United States. The United States took the position of you can take it the way it's written, or if you don't, then we will pursue more serious criminal charges. Mr. Taylor, faced with that proposition, accepted the fact that, well, we don't agree with them. We'll take it the way it's written. He did that. Why most defendants do that is to get the benefit of the bargain that he's negotiated with the government and eliminate the risk of not accepting that proposal. In this particular instance, though, he didn't get the bargain that he bargained for. In fact, he got something worse. He was bound not to object, but the United States was free to accept enhance or it wasn't exactly an enhancement here, but one of the things they agreed to was a two-level reduction in his case because he had not engaged in any activity of distribution of child pornography. The probation office found that that did not apply, and rather than the United States saying, well, we still advocate a sentence of between 108 and 135 months, they then advocated a sentence between 135 and 168 months. That right there, though, did not violate paragraph 9A of the plea agreement, correct? It does not. Okay. And I recognize that. And 9A is somewhat in conflict with, I guess, I believe it was paragraph 11, which is the stipulated guidelines. And I guess that's where the case kind of boils down. 9A says they can recommend a sentence within the range found by the court, and we recognize that. The stipulation, though, what's its purpose? I mean, if they're going to do that anyway, then the defendant gives up the right to challenge enhancements under the guidelines, then he's in a no-win situation. And that's what the defendant found himself in this particular situation. He found that he gave up his right to challenge the enhancements, while the United States did not reserve the right to recommend a sentence within the guideline range found by the court. That begs the question, what does binding mean? In paragraph 11, the United States drafted a plea agreement that said, this stipulation is binding on the parties. I recognize it's not binding on the court, because nothing is going to be binding on the court relative to a plea agreement. But the question arises, then, that the parties, not intentionally, of course, but will make errors on occasion, where the district court will find that it sees the guidelines differently, which is what happened here, right? And so when the advisory range, sure, contrary to Mr. Taylor's wishes, increases, 9A does still provide a protection to Mr. Taylor, because it prevents the government from arguing, for example, well, now that we're outside of what we agreed to in the plea agreement, I think you ought to impose the statutory maximum penalty. Correct. It can't do that. Correct. But at the same time, the defendant was precluded from challenging the enhancements that have been stipulated in the guide. I understand that the government could take the position that they can't recommend a departure upward. But in essence, that's what they did. What they did was they agreed to recommend a sentence between 108 and 135 months. That's what they agreed to by stipulating that the base offense level is going to be 31. I mean, that's what they're saying. That's why the stipulation is in there. When they don't do that, that is, in essence, exactly what they did. They asked for an enhanced sentence above that which they negotiated with the defendant, where the defendant gave up important concessions. And I point that out because if you look at the five-level enhancement, for example, I think the court can search the record, can look at the pre-sentence report, can look at the transcript of the sentence in hearing, and the court will not find any facts to support that five-level enhancement. Well, hold on. Hold on on that. Okay. In the 3553 discussion, the district judge expressly talked about the two images that were found on the Motorola smartphone, or the still images in the video. Yes. Right? Yes, Your Honor. Now, why don't those facts support the pattern enhancement? Because at no point, at no point did Mr. Taylor stand up and say, hold on, I don't know what you're talking about. The individual depicted in the images and in the video is absolutely not my stepdaughter. At no point did he say anything like that. No, because he had agreed not to. He agreed to accept the five-level enhancement. What would have been his point to stand up and say that? Well, to say it's fiction. It's counterfactual. I don't have any idea who this person is. And to be candid with the court, it's not counterfactual. So I will agree with the court that that representation is true. The question is, does it satisfy the elements which would then make the five-level enhancement apply? In the photographs, for instance. The one is a contact offense with a minor. I'm sorry? The one image is a contact offense with a 14-year-old girl. Well, the one image, and I know the court probably doesn't have this, but the one image is simply a person laying on the bed asleep. No, no, no. Not that one. The other one. The other image, I would dispute that it demonstrates contact. What it demonstrates, and I think the record reflects what it demonstrates, is that he was present, the person was asleep, and he exposed his genitals. Now, is that an offense? We'll see what your adversary thinks, but I would sure think so. Right. But the question would be, and I think that would be, is that an offense? If you expose your genitals in the presence of a minor who is asleep, what offense have you committed if the person is not awake? And it may be, but the question would be. It's more than exposure. He touched the child. He touched the child. Right? I mean, that. I don't believe the image depicts that. Well, I mean, I hate to read it, but, I mean, that's exactly what the district court found, that he placed his genitals on or near the child's foot. Or near. And, again, I. No point for Mr. Taylor to stand up and say, I don't know what you're talking about, I never did it, it's not me. No, I will not. There is a picture of his genitals on or near a child's foot. The question is, does that create a pattern of activity, and the court may have found that it did. I mean, that's not. But the point here is that we weren't able to argue that to the court because we agreed otherwise. And the position of Mr. Taylor is when we give concessions not to argue about it, we accepted that. If those facts came forward, the court may well find that it applied. We accepted that. But we also accepted the United States would stipulate it to an offense level of 31 and would go forward with their obligation to make a recommendation in accordance with that binding stipulation between the parties. They didn't advocate a sentence within that range, and that's what we allege is the violation. If the court finds that there was a violation of the plea agreement, then Mr. Taylor's position is that he should have been allowed then to advocate, for instance, what we've discussed here today. Does the five-level enhancement actually apply to me? Does the two-level enhancement for the computer still apply today? And those issues could have been addressed to the court. They would have been resolved by the court through an adversary proceeding rather than an agreement. And then they would have either come before this court or not, depending on how they were resolved. Mr. Taylor's position is really very simple. And his simple position is that he gave up his right to a trial. He gave up his rights to challenge enhancements presented by the United States which may or may not have been found by the court, and he didn't get what he was bargained for. And that's, in essence, what his argument is. He believes the case should be remanded back to the district court with instructions that the United States comply with the terms of the plea agreement and that the court then sentence in accordance with that recommendation. And going to the recommendation, I think all of us that have done this long enough know the United States recommendation is very important to the district court. And, in fact, the district court often accepts that recommendation because they trust the United States has probably more information than the court knows about the offense, the offender, and other things. Had the United States made a recommendation within the 108 to 135 month range, we'd ask for a sentence of 120 months. We didn't even ask for a sentence at 108 months to low end, acknowledging that some of these factors may warrant an additional sentence. But we believe that had the United States advocated a sentence within that range, the court would have been more likely to have accepted and imposed a sentence within the range rather than at the bottom of the range advocated by the United States, which is typical in a case where you see a defendant who comes forward, he pleads guilty, he doesn't go to trial. This case was resolved very quickly. I think the court looks at the record. There's no motions in the case. There's no anything. It was agreed. It was almost resolved at arraignment. And that's in Mr. Taylor's position. Counsel, your time has expired. I apologize. Thank you. Mr. Wood. Your Honor, may it please the court, as quickly as I can, I would just say the parties bargained in good faith at sentencing when they realized they'd made a mistake. Both parties accepted the mistake. It wasn't incumbent upon either party then to say, District Court, no, I know that we were wrong. But please go with the wrong calculation. If that were the case, we'd have a different sort of appeal. I'd also say that the plea agreement factual basis does not say on or near. It says touched. I don't want to go into that. Let me find the exact page. It's on page 11, paragraph QB. It says touching the underside of the foot. I'm not going to use the express language, but that is one among many ways in which the defendant ended up with the result of the bargain that he entered into. And the United States did not then file additional charges, and that would benefit to him. And unless there are specific questions, I'll rest on the government's brief. All right. Thank you. Mr. Herhart, your time has expired. So our thanks to both counsel. The case is taken under admonishment. That concludes today's calendar. The court will be in recess until next week. Thank you.